And our next case this morning is Kathleen Hayes versus the City of Chicago Board of Education. Good morning your honors and may it please the court. My name is Erica Seaburn and I'm here representing the Board of Education and Mr. Lyons. I'd like to start with the jurisdictional issue because that is a threshold inquiry and it was the basis of the motion for sanctions. This appeal is the proper use of the collateral order doctrine. The case is most like the Supreme Court case in Plumhoff where the defendants did not deny that they had committed the conduct. The only question that they brought on the appeal was contesting whether the law against it was clearly established under the second prong of qualified immunity and that's what we're asking the court to do here. We are not asking the court to determine any factual dispute including the factual disputes that were identified by the district court on summary judgment. We're asking the court to rule on whether there is clearly established federal law that was violated assuming the facts in the light most favorable to Hayes in this case. So that is a permissible use of the collateral order doctrine so the court does have jurisdiction over the appeal. I'll move on to the qualified immunity question. It was Hayes's burden before the district court to disprove qualified immunity and to bring forth clearly established federal law for that second prong. The district court did not hold her to that burden. Throughout summary judgment and in the briefing in this court, Hayes has focused on the first prong of qualified immunity, the constitutional violation. But while a constitutional violation is necessary to defeat qualified immunity, it's not sufficient. You need the second prong as well and for the purposes of this appeal we're only looking at the second prong. So Hayes could have shown the second prong either by identifying a body of precedent or by showing that the constitutional violation was obvious. But she didn't show it through either option. In terms of the precedent, it's not enough for Hayes to rely on general statements about the First Amendment. Reigel v. Howard's laid this out in the Supreme Court. So it's not enough for her to say the First Amendment prohibits government officials from retaliating. That's just too general. In order to succeed for qualified immunity, she needs to particularize the right. It has to be specific enough that a reasonable public official would know what conduct is prohibited and what conduct is allowed. The cases that she relies on, however, are cases like Bantam Books and Backpage where the factual scenarios are so far removed from what was going on in this case that they cannot have provided any guidance. And because of that, they have no factual commonalities. They only end up relying on those very general statements about the First Amendment. Because we're moving it out of kind of the employer context to this non-employer context, I wanted to know, from reviewing the record, wasn't quite clear the relationship between Northwestern School of Education and Chicago Public Schools. Is there a contract? Is there a... Your Honor, I would have to go back and look at the record to see exactly what terminology is, and I might be able to get you more information for rebuttal. I can tell you that Ms. Hayes was not a public employee. She did not work for CPS. She worked for Northwestern. She identified herself on summary judgment as... Chicago Public Schools. Yes, CPS, as Chicago Public Schools being the entity that the Chicago Board of Education governs. On summary judgment, if you look at her summary judgment pleadings, and that would be document 80 and document 88 in the district court record, she refers to herself as a private sector person. And she refers to Northwestern as a private employer, which they are. So to the extent that there is any relationship between CPS and Northwestern, she did not... Every time you say CPS, I have to remember what those initials stand for and not CPS, as is custom. So if you could just keep it to Chicago Public Schools, because I get distracted every time. I'm sorry. I understand. That's a common area of confusion for us as well. Since she was not an employee of Chicago Public Schools, she never alleged that she was. And in terms of the qualified immunity, she never alleged that there was clearly established federal law that applied to her as being a non-public employee. That was not the strategy that she took in terms of trying to present the clearly established federal law. There's clearly established federal law about public employees, but she did not bring that law to the district court and say this is the body of law that controls the second prong of qualified immunity. In terms of the second prong of qualified immunity, she also could have tried to show this through obviousness by showing that the conduct was patently violative of the Constitution, but she didn't really attempt that. The district court didn't rule on it, and the situation just does not fall into those very extreme fact patterns. So again, it was Hayes's burden to defeat qualified immunity by showing the second prong, and she just did not do so. I'll briefly touch on the sanctions motion. It should be denied. Rule 38 is meant to deter frivolous appeals. This one is not. So if the court has no other questions at this time, I'll reserve the remainder for rebuttal. Thank you. Thank you. Mr. Pursoon. Good morning, Your Honors. Michael Pursoon on behalf of Kathleen Hayes. The law is pretty clear. The government and reasonable government officials, including Matt Lyons, should know that you can't do indirectly what you can't do directly when it comes to the First Amendment. You can't retaliate against someone because of their speech. That's at a very high level of generality. You have to make it more specific to this case in order to overcome qualified immunity. We looked at, there's a technical aspect that you're talking about where we want to have this very clear statement that would put someone on notice, and there's a practical aspect too, but to directly answer your question about the technical aspect. It's actually not a technical, practical distinction. It's a legal rule. Yes, Judge. Bantam Books is a good place to start in 1963. There you had an agency that didn't have any regulatory power, and it was sending out, it was engaging government speech. It was using that speech to discourage other speech. Right. The Bantam Books case and the more recent case of National Rifles Association versus Voolo established in our iterations of the general principle, neither of them is comparable to what the facts in this case are. So what you need to do to overcome qualified immunity is to identify a case with factual similarities to this case that would have put Mr. Lyons on notice that his emails to Northwestern notifying the university's education school of Ms. Hayes' conduct or postings on Facebook was or were, those emails were coercive of Northwestern to punish Ms. Hayes for her First Amendment speech by firing her. So it's a question of coercion. I agree. You haven't identified any cases that are at least factually similar to this one that would have put Mr. Lyons on notice that by notifying the university in the very diplomatic way that he did, he was coercing the university to punish their client for her Facebook speech. I'm trying to listen very closely to your key then on is a fact question. Was Lyons' speech coercion? I think there is a legal rule, ban on books, back pages, and as Voolo decided after this case but in saying... Actually the question of the sufficiency of the evidence at summary judgment to create a material issue of fact is a legal question and the qualified immunity question is entirely a legal question. As we brief judge, the district court made a finding that there was a fact dispute that Right, and we're not bound by that. We can look at the record and determine whether there's a legal question here on qualified immunity. I just note judge that the district courts finding that there was a fact dispute is not... District courts make no findings on summary judgment. They're not fact finders. Even if you use that language, Judge Ness used that language, it's not a factual finding. It's all about the sufficiency of the summary judgment record to create a tribal issue of fact under the applicable legal standards or whether either on the merits the defendants are entitled to judgment as a matter of law or on qualified immunity. The qualified immunity shield has been pierced by you. They have no burden to establish qualified immunity. Once asserted, it's your burden to overcome it. On the question, Judge, on qualified immunity, I think that when we look at Bannon books, fact pages, when we see even the Hutchins case, it says that when there is a threat, the Hutchins case that was cited and that the district court cited. Right, that's the legal principle. There isn't anything in this case that even remotely resembles the fact patterns of those cases. And so for qualified immunity purposes, you need to come up with a case, point us to a case that is at least within the zone of yours in order to demonstrate that Mr. Lyons was on clear notice that his emails to Northwestern were unconstitutional. I'll use the facts from the back page case as we brief them, Judge, that I think is very similar and is on point. It goes well beyond the general applicability or broad principles. If you recall in back page, Sheriff Dart, probably doing some really good work and some innovative governing, wrote a letter to Visa and MasterCard saying that as a sheriff and as a father, he wanted to bring to their attention that back page was running ads for prostitution basically. And the district court decided that that didn't state a claim and that there wasn't a first amendment violation. It's a well-reasoned opinion by respect to judge. This court disagreed and in noting their disagreement, they said it doesn't matter that Visa, one of the people who was shook down so to speak, actually put a declaration on the record saying that they weren't threatened. What this court looked to was the actual conduct, the timing. Sheriff Dart sends this letter which on his face denies that it's a threat. Visa denies it's a threat. And he sends a letter in response to speech. Sheriff Dart was threatening criminal prosecution. Nothing remotely like that happened in this case. He wasn't threatening criminal. Mr. Lyons was very diplomatic, said this is not a termination worthy event. It was concerning, but he left it completely in the university's hands about what to do with it and expressly said that. And then after that just responded to the university's request for information. My recollection of that... There is nothing in this email exchange that comes even close to any kind of a threat. He testified that his purpose in sending the letter was to make the speech stop and look at what the speech that he wanted to stop was. One of the speeches, which was also association, was Kathleen Hayes posting on Facebook, let's get the more government oversight of CPS because they're not doing a good job on sex offenses. Let me zoom out a bit. What kind of letter could Lyons have written from Dr. Hayes' perspective that would not have given rise to First Amendment concerns? He could have written a letter saying, I mean I don't know what his legitimate purpose in sending this letter is. If he had a letter that was critical of her conduct in her role. This isn't talking about she's not doing a good job as a partner in placing CPS students. Those students were continually being placed. He wrote a letter coming after her because of her private speech. So if he wants to write a letter, the letter he could write is say, we're in a partnership, really important partnership to get student teachers into CPS. And Kathleen isn't doing it. Kathleen's not doing it. In fact, she's steering people away. And here's the proof. But what he shouldn't be doing is sending letters that says, Kathleen Hayes is a registered Democrat. Kathleen Hayes is a registered Republican. Kathleen Hayes donated to Planned Parenthood. Kathleen Hayes donated to the National Rifle Association. He's targeting her. What he shouldn't do is complain to her employer about her speech. And in doing so, bring in the quote, importance of the relationship. I know you know where I'm coming from. These are direct quotes from Matt Lines in his email that we put in our statement of the case. I know you get it. This extended dialogue back and forth. And clearly, Northwestern got the message. They said, we apologize. We know the importance. Our response will be swift. I've already talked to the General Counsel's Office about this. This is an employee who, the person who made the decision to fire her, had personally reviewed her as only excelling. And within three days of getting the email from Matt Lines complaining about her public protected speech and protected association, he's asking to fire her. That's where that brings that right in to back pages, where Sheriff Dart raises this issue of concern. As a father, I'm writing a visa. Somebody says in that case, cease and desist. It was a request. There was a threat of, we found in back page, there was a threat of criminal prosecution. Asking to cease and desist. As a fact. And coming back to what I was trying to argue, I really think that what's on appeal here is the fact question. What Matt Lines has always argued is that he didn't make a threat. He didn't have any authority. And the district court found that there was a threat. But he has accepted for purposes of this interlocutory appeal that we accept that my email was a threat. There's no clearly established law, though, that put me on notice that I could not send that email. If he truly accepts that this was a threat, I think that answers Judge Sykes' question to me. If he truly is here on a pure legal question, says we accept that this was a threat. This is talking about... Unqualified immunity, the defense doesn't have to accept that this email exchange constituted a threat. All the defense has to do is to accept that the inferences can be drawn, even assuming the inferences can be drawn in your client's favor. Constitutional violation was not clearly established here. That's how qualified immunity works. They don't have to say, yes, I made a threat. All they have to do is assume for purposes of the argument that inferences could be drawn in your client's favor. That's setting aside whether this is really a legal question or a factual question, but we don't have to get into that now. It's really a question of the sufficiency of the evidence to establish a constitutional violation in the first place, which is step one of qualified immunity. But even if they're not relying on step one, they're relying on step two. I see I'm out of time, Judge. Thank you for your time. Ms. Seaborn, anything further? Let me just ask a question at the outset here. Are you relying on step one of qualified immunity analysis? Are you arguing the merits about whether there's a constitutional violation here? No. Actually, the evidence is sufficient to establish a constitutional violation. No, we are not arguing about the first prong of qualified immunity at all. So all of the factual disputes that counsel spoke of or that were identified by the district court, we will deal with those when and if we get back to the district court. That will be the place to get into whether or not Mr. Lyons had the intent and what exactly the text of those emails meant. So for purposes of this appeal, we are limiting this to the second prong of qualified immunity. It's an unusual strategic choice, but it's yours to make. Yes. Judge Pryor, in terms of your earlier question about the business relationship... I just wanted to, I was going back to the brief, I'm sorry, to make sure that you did accept prong one. You're only arguing prong two. We are only arguing prong two. Okay. For the purposes of this appeal, we'll, you know, assume the facts as they were presented. Okay. We'll deal with prong one once we get back to the district court and we're in front of a trier of fact. In terms of your earlier question about the business relationship, if you look at document 87, which is one of the summary judgment pleadings, pages 5 and 6 discuss the partnership, quote-unquote. Document 87? Document 87, pages 5 and 6. That's where they discuss the details of the partnership between Chicago Public Schools and Northwestern. My colleague informs me that there is a contract, but the text of that contract is not in the summary judgment record. So if that's something that you're interested in, we might be able to produce that in a 28-J letter or supplemental briefing. Thank you. If the court has no other questions, we would ask that you reverse the district court's judgment on count one and deny the motion for sanctions. Thank you very much. Thank you very much. Our thanks to both counsel. The case is taken under advisement. And we'll move to our last case this morning. Michael Lincoln versus, I guess it's...